The next case is Lisa Hill Leonard et al. v. The Alabama State Board of Pharmacy. Richard Davis should be here for Leonard and Bethany for the Alabama State Board. And Mr. Davis, you may begin when you're ready. Good morning. May it please the Court. Richard Davis, Chair of the Alabama Department. I'm going to brief for Lisa Leonard. The PREVACT, the purpose of it is that it's an emergency statute for emergent times. A national emergency occurred when COVID-19 broke out. The PREVACT seeks to recruit people by encouraging providers to bring forth whatever covered countermeasures are that are defined in PREVACT declarations to assist in a national emergency response. Ms. Leonard and her pharmacy answered that call. And in doing so, they should be entitled to both the immunity that the Act provides and to the preemption that the Act provides. Well, the district court dismissed this case based on Younger v. Harris. Yes. And so, can you tell us why these issues cannot be handled by the State in the State proceedings? Yes, absolutely. There are three exceptions to the abstention. One, we would say that there is an obvious and facially conclusive preemption provided by B.A. that expressed preemption. And that is an exceptional circumstance in itself. The second would be, we think we alleged in abundant detail, bad faith. If you look at the facts of the case, everything, none of it makes sense. It looks like there's an ulterior motive. We have an email, for example, between a competitor of Leonard without Ms. Leonard's knowledge. And if all goes the way we planned, I believe we will have no further issues from the drugstore. That's document 4519. And you're right. The district court said that there was no connection to the board members or the board itself, that there was some suggestion of maybe some impropriety on the part of the investigators. But how do you link that back to the board? Well, I think there are two things, Judge. The first thing is, you have to consider basic things like, are the investigators rogue investigators? Who ultimately is responsible for them, if not the board? The second important thing that I think Judge Marks didn't have in front of her that comes after the hearing is that the executive secretary or director of the Board of Pharmacy, they submitted that, that affidavit sets out or declaration sets out the board's process. And we responded to that document and pointed out if that document in fact sets out the board process, which I think it accurately does, and you look back at the facts that are alleged, they didn't follow their own process. But the standard for bad faith, according to the Supreme Court in Perez v. Ledesma, is whether the prosecution was initiated without hope of obtaining a valid conviction, pure judgment. And we adopted that standard in Rednor v. Citrus County. What do you have to say about it? I mean, that standard seems to apply in this case. Express preemption, Your Honor. There are, the board would be charged with notice, and their counsel would be charged with notice of the PREP Act, the declaration, and the HHS advisory opinions under that declaration. The declaration, Amendment 4, adopts the So if you are moving ahead, looking to prosecute someone that is preempted, I think that responds to what you're talking about. What if the bad faith exception doesn't apply? Then what are you left with? Express preemption and the no adequate opportunity exception. Can I take that second one? The no adequate opportunity. My understanding, and correct me if I'm wrong, is that the way the statutes and the state system is constructed is, in the event the license were to be suspended, number one, you would have an appellate remedy under the Alabama State Courts. Number two, my understanding is it's an immediate stay. So your client's not prejudiced in that the suspension would automatically be imposed. You could go and litigate it. And then on top of that, there's also So you've raised the issue of being able to effectively set forth the immunity argument, which you have tried to liken to qualified immunity. Is it not correct that you could move for immunity through a motion or, as you've already done, assert it through an affirmative defense? So how is the Alabama system giving your client an insufficient opportunity to go ahead and litigate this matter as an alternative or better Right. I think there's several answers to that, Judge. One is, is that the PREP Act, which has to control here, if the Supremacy Clause means anything, is for you shouldn't have to stand a suit and liability. And the Act addresses suit and liability. So you should be able to get a The other aspect of it is, is at least... What do you mean by on the front side? I mean in the district court. Okay. But it's already been raised in the state proceeding. And the reason for that, Judge, was necessity. When you get a statement of charges from the board, you have a set amount of time to respond to it. And there was a hearing set. So the fact that we raised preemption, we raised these other issues, is to prevent waiver. And not in that court. And it would have been impossible to... So preemption can't be considered in the state proceedings at all? Well, I don't think it can be fairly considered. And it shouldn't be considered if the PREP Act is going to be enforced as Congress intended it to be. Which is to encourage people to come forward. If they know they're going to have to stand trial on administrative proceedings, with the board is acting outside of its legislative mandate on the practice of pharmacy, then I don't see how you can actually get a fair or full decision on the preemption issue. But isn't the issue under Middlesex, which interprets the younger factor, that you have to be procedurally prevented from raising these claims? To Judge Wilson's point, you're not procedurally prevented. In fact, you have raised immunity claims. Isn't that sufficient in terms of an alternative form? No, sir. The reason it's not is preemption has to have some substance. Not just procedure. And the statute says, PREP Act says, suit and liability. And it is absolutely preempted because all of the charges related to COVID-19, the state and the board has conceded that. And they do have a problem or conflict with it. You can't, as the HHS decision, the advisory opinion says, you can't do indirectly, if you say, what a private plaintiff who is actually seriously injured could not do directly. It just wouldn't make sense in this instance. And it would cut entirely against what the PREP Act and Congress's intentions were. It would prejudice preparation for a national emergency and the response to it. The PREP Act confers immunity on covered persons for claims for loss. What is the claim for loss here? Well, I think there are two answers to that, too, Judge. In terms of claims of loss, one way to look at it that I think is legitimate is that the board is using tort language, malpractice and gross negligence. These are claims for loss, but there's no serious injury or death or any of the other itemized things. Nevertheless, they say, based on their argument, that they are standing in the shoes effectively to protect the people who might be exposed to these claims of loss. So, consistent with the HHS opinion again, they are attempting to do what the injured parties can't do for themselves, and they're doing it outside all of the protections of the PREP Act, pleading with particularity, the procedural requirements. They're doing it at a lower burden of proof, not clear and convincing evidence. And I think that's why it's pretty. All right. Thank you, Mr. Davis. Ms. Lee. May it please the Court. Bethany Lee for Defendants Appeals. This case involves ongoing state proceedings in which plaintiffs have been charged with violating state regulations that are important to the health and safety of the public. In these proceedings, plaintiffs will have an adequate opportunity to raise both federal and state defenses, including the preemption argument that they have brought here, so it would not be appropriate for a federal court to exercise jurisdiction. But even if this Court did reach the merits of plaintiffs' preemption argument, their argument still fails because it is contradicted by the text of the PREP Act and would lead to untenable policy outcomes that threaten the health and safety of the public, thus contravening the very purpose of the PREP Act. Turning first to the younger issue, the Supreme Court and this Court have repeatedly emphasized that principles of equity, comity, and federalism require a federal court not to intervene when there are ongoing state proceedings and the three middle sex factors are met. There's no dispute as to the first two middle sex factors on appeal, so I'll jump straight to the third factor. Judge Reese, as you correctly pointed out, there is absolutely an adequate opportunity for plaintiffs to raise their preemption argument in the state proceedings, to get an appeal as of right, to appeal it up through the state court system, and even, ultimately, to seek review from the U.S. Supreme Court for their federal claims. The record will not be set in stone. There are provisions in the Alabama APA that permit addition to the record when deemed desirable by the Court. And I think it's telling that when asked about the adequate opportunity to litigate their claims, counsel simply turned to the preemption argument. And again, when asked about showing bad faith under the standard of showing that a prosecution was brought without hope of obtaining a valid conviction, his answer was preemption. And so really, his younger argument does rise and fall with the preemption argument. Counsel, can I ask you just on the preemption point, because you just touched on it, and I think there's a motion that's still pending. I know the proceedings, I think, have been stayed, but do you agree that there are a couple of charges, specifically the ones I could glean? I know there's 50-some-odd charges, but I believe that there's a few regarding pharmacy technicians' ability to administer the tests. Has the state amended that? I know there was a motion pending just procedurally so that we can understand exactly what's going on with a few of the charges that I think were conceded to possibly be preempted. What's the status of that? Yes, Your Honor. Those charges have been dropped. They've been dropped. Okay. All right. Thank you. And that's in the record under the amended charges. Okay. Yes. And even if plaintiffs did have a plausible preemption argument, the Supreme Court and this Court have already said that in itself does not create an exception to Younger. In Namsi, the Court simply said that even if a preemption claim is substantial, Younger still applies because these claims are no different from any other constitutional claim. And it expressly declined to state whether a facially conclusive preemption claim would even then create an exception to Younger. And this Court in Hughes v. Attorney General similarly looked at a preemption argument, said, okay, there are arguments on both for and against preemption, therefore it is not facially conclusive, we need go no further, Younger applies. And on the facially conclusive element, I mean, there are many arguments I can give against preemption. But just quickly, we have an opinion from the federal government, from HHS, which would normally be motivated to interpret its own statutes quite broadly. We have an HHS opinion saying it does not preempt state licensing requirements except to the extent that the state regulations prohibit or effectively prohibit covered persons from administering covered measures. And here it is not the case that the Board is prohibiting or effectively prohibiting pharmacists from administering COVID tests. As plaintiffs themselves have acknowledged, there are other pharmacists who are engaging in these tests and the Board has not taken action. The Board is only taking action in this case because there are alleged violations of the same health and safety codes that are applicable to anything a pharmacist does. So the Board, as I understand it, the Board could revoke the drugstore and Leonard's license to administer COVID tests if it determines that there is bad administration of these countermeasures, right? That's not inconsistent with Rafa. No, Your Honor. It does not effectively prohibit pharmacists from administering these tests. Yes, it is true that the consequence of violating a regulation could be the loss of license, but that could also be the consequence of violating any state law, even a criminal law. If someone robs a bank, they may lose their pharmacist license. That would effectively prohibit them from administering COVID tests, but that is clearly not something addressed by the PREP Act. Seems inconsistent with PREPA, doesn't it? No, Your Honor. PREPA was passed for the purpose of removing the impediments to dispensing COVID tests. Yes, Your Honor, in a targeted way. And I think the title of the PREP Act is illuminating here. It's called Targeted Liability Protections for Pandemic and Epidemic Products. And really, the PREP Act, the text makes very clear from start to finish that the PREP Act does one thing. It provides immunity from tort claims. Your Honors are correct to observe that these are claims for loss that immunity is provided for. Plaintiffs have acknowledged in their briefings that the State Board here is not claiming any loss. There was no loss. Plaintiff's argument is that in order to bring a claim, you must fall under the specific exceptions to immunity of covered persons under Section D of the PREP Act. But this would result in some very strange results. Because this exception only permits civil claims to be brought when a death or serious physical injury has already occurred and the suit must be brought under certain circumstances before a three panel judge in the D.C. and so on. And by that logic, the State would be powerless to take any civil or criminal action to prevent things from happening. So if a pharmacist started using the same needle over and over from patient to patient, spreading contaminated blood from one to the other, by plaintiff's logic, the State would be powerless to take any regulatory action. And plaintiffs could only wait for a death or serious physical injury to occur before a civil suit could be taken. That is clearly not what the PREP Act intended. And even worse, it seems that if all suits are prohibited except for under this exception, then the State could not even bring a criminal suit. Say if a pharmacist poisoned the needle and then used it to administer a COVID test, apparently a criminal suit would be off the table. We would have to wait for the representative of the murdered victim to bring a civil suit in D.C. Clearly a ridiculous outcome, not the purpose of the PREP Act. Counsel, can I ask you, you've spent a little bit of time on your briefs when it comes to the facially conclusive preemption argument. And this was raised by your opponent because I think it plays in a little bit with irreparable injury. In your briefs, you focus on the charges. My understanding is that the irreparable injury exception really applies when the statute itself is flagrantly violated with constitutional prohibitions, meaning you look big picture. You look at the statute. You don't itemize it by charge. And therefore, I'm struggling with the way in which your opponent would have me find this to be a facially conclusive preemption problem because there's a lot of focusing on charges in particular as opposed to the statutory scheme. And it's very narrow as I understand it. The case law seems to suggest that it's only the clearest of federal preemption claims that would survive. Can you speak on how you believe we should be properly applying the facially conclusive argument? Yes, Your Honor. Your Honor is completely correct. You should be looking at the state law at issue to see if it is facially preempted by federal law. And it is simply not the case here at all. We think the HHS opinion is very much consistent with our position. The PREP Act may preempt state regulations to the extent that they prohibit pharmacists from administering COVID tests. Clearly, these statutes, these state regulations do not do that. Let me ask you a question about the bad faith exception, similar to what I asked Mr. Davis. I asked him what is the link to the board, assuming there's bad faith on the part of the investigators. And he said something to the effect of, well, they're not rogue investigators. We have no indication they're rogue investigators. So, of course, there's a connection to the board because they're working for the board. What's your response to that argument? There's several responses, Your Honor. First of all, it is the burden of the plaintiff to show bad faith. And as Your Honors have pointed out, this is a high standard. They do need to show that the charges were brought without hope of obtaining a valid conviction. And they did not come anywhere close to that. I think the Ninth Circuit opinion in Keneally is very much on point. In that case, there was a medical board and there were allegations that staff members of the board had some correspondence indicating bias, similar to here. And the Ninth Circuit said, absent something else, you cannot say that evidence of one person having bias automatically means that someone else has bias. And the Ninth Circuit, I think, had a good analogy here. They pointed to a previous case in which they had held that a law clerk had some bias. But they said that does not automatically disqualify a judge, absent some other evidence tying the bias to the judge. And so I think this logic applies here as well. And I think it's telling that in the plaintiff's briefing, they don't mention anything about the board members themselves. As the district court observed, there are no allegations about what any board member did or what any board member said. Even more, I don't think the plaintiffs mentioned the people who actually bring the charges whatsoever, not even their names. As stated in the Yateman Affidavit, the decision to bring charges against pharmacists is made by the executive secretary of the board, the chief investigator, and the board council. These decisions are not made by low-level investigators. And these decisions are not made by competing pharmacists. So whatever factual allegations there may be about these three low-level investigators or competing pharmacists, that simply does not allege anything as to the board or the prosecutors who are bringing charges. So there is simply no way that the plaintiffs can meet their burden to show a bad-faith prosecution in this case. I would also like to address the argument that because they claim they have immunity from suit, that they will not have an adequate opportunity to raise this in the state proceedings. First of all, they don't have immunity from suit, and that is the PREP Act argument. But even if they did have immunity, Younger still applies. And that's because just an attack on the procedures themselves does not mean that there is an exception to Younger. Younger itself involved the plaintiff who said he should not be subject to the suit in state court at all because the prosecution itself was unconstitutional. And, of course, the court still said we must abstain. As the Supreme Court stated in Ohio Civil Rights Commission, we have repeatedly rejected the argument that a constitutional attack on state procedures themselves automatically vitiates the adequacy of those procedures for purposes of Younger. So it simply is not enough to say that the suit itself is unconstitutional and therefore they should not be subject to it. They do have the opportunity to raise all of these arguments in the state proceedings, to appeal it through the state court system and even seek review from the U.S. Supreme Court. And that is adequate. I would also like to address plaintiff's arguments in their briefs that the board is acting without authority because the board does not have authority to regulate COVID antibody tests. They acknowledge in their complaint below that the board does have the authority to regulate the practice of drugs, the dispensing of drugs. And the Alabama Code defining pharmacies and drugs defines drugs this way. Substances and preparations intended for external and internal use in the cure, diagnosis, mitigation, treatment or prevention of disease. I think it's quite obvious that a COVID test is something used for diagnosis, mitigation, treatment or prevention of disease. In any case, an argument that a state board is allegedly violating state law is certainly not something for this court to decide. It is absolutely something that can be handled and should be handled by the state system. If there are no further questions, I ask this court to affirm. Thank you, counsel. Mr. Davis, you deserve some time for rebuttal. Yes, Your Honor. One of the reasons plaintiffs didn't mention who brought charges is because if you look at the charges, there are almost no facts alleged in those charges. And I think that is something that's significant to consider in making your bad faith analysis. There has been very limited disclosure. We are unaware and have said this in the briefing of any patient who is not connected with the board in some way who has suffered any injury or has any complaint. That's my understanding. Let me focus for a minute, please, on the obvious and facially conclusive aspect of this and the exception to Younger. One of our arguments is you can take the charges from the record and look at them, and you can look at that express preemption provision. And just about every one of those charges, with the possible exception of this 15-year-old gun charge that is brought back into this case somehow, has a direct relationship to COVID-19. The board, we don't think, has jurisdiction over COVID-19 because it's not mentioned in any of its statutes or regulations because it came after the enactment date for those. And we have a different rating than the state of drugs. But in our briefing, we've laid out what that authority is, and you can also find it in document 45, page 43 through 47. Mr. Davis, let me follow up on that, though, and Judge Pryor touched on it. You've made a point to address the immunity from suit and liability, but the qualifier with respect to all claims for loss, I'm struggling a little bit to understand how we can characterize your client's loss of license as that loss. I mean, it is clearly loss in the tort sense. I mean, injury resulting from the vaccine. It's not a loss in the sense of losing the license. So when we're talking about with respect to all claims for loss, the claimant here who's coming forward is a regulatory suit. It is not one rooted in injury or losses defined in the statute. So how are we going to square up the plain text of 247D with what type of enforcement action we have here? Because it doesn't seem to fit. Yes, sir, and I understand that. Here's the answer. I think you have to look at this with the state, as you suggest, in the shoes of a plaintiff. And they are bringing a claim of loss. In this case, it appears to be a loss without injury, a loss without specific factual allegations that can be defended at the state level. And it's being brought against a pharmacist and a pharmacy that answered the PREP Act's call, the encouragement from Congress and HHS to step forward in a national emergency. If the state, and this you can find in the HHS opinion, document 4524 in the record, page 11, there are two important passages I would like to highlight. One says it would be incongruous for Congress to grant the Secretary the authority to immunize those persons from suit in connection with a public health emergency while nonetheless permitting the states through licensing requirements to take the very action that the Secretary's declaration identified as necessary to respond to a public health emergency. And later on that page, pharmacists who would be immune under the Secretary's declaration could hardly order and administer COVID-19 tests or vaccines if the states could impose penalties for the same activity by revoking their licenses. Such state or local requirements would threaten to make the Secretary's authorizing identification a practical nullity. So we think this case is squarely within the intended protections of the PREP Act, and we would ask you to reverse with directions. Thank you, Counsel.